UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **INGRAM BARGE COMPANY** § | CIVIL ACTION |
|     **PLAINTIFF,** § | |
| § | NO. |
| v. § | |
| § | IN ADMIRALTY |
| **STOLT-NIELSEN** § | |
| **USA, INC.** § | |
|     **DEFENDANT.** § | |

### INGRAM BARGE COMPANY'S ORIGINAL COMPLAINT

Ingram Barge Company ("Ingram"), for its Original Complaint against Stolt-Nielsen USA, Inc. ("Stolt"), avers as follows:

### THE PARTIES

I.

Plaintiff Ingram is a Tennessee corporation with its principal place of business in Nashville, Tennessee.

II.

Defendant Stolt is a Delaware corporation with its principal place of business in Houston, Texas. Its registered agent in Texas is Daniel Carr, who can be served at 15635 Jacintoport Blvd, Houston, Texas 77015.

### JURISDICTION AND VENUE

III.

This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and is specifically pled and designated as such. The Court has original jurisdiction pursuant to 28 U.S.C. §1333. The Court also has original jurisdiction over this

lawsuit under 28 U.S.C. §1332(a)(1) because the amount in controversy exceeds $75,000, excluding interest and costs, and is between citizens of different States.

IV.

Venue is proper in this district because the Southern District of Texas has personal jurisdiction over Stolt, which maintains an office in Houston, Texas. *In re McDonnell-Douglas Corp.*, 647 F.2d 515, 516 (5th Cir. 1981). In the alternative, venue in this district would be proper pursuant to 28 U.S.C. §1391(b) because Stolt resides within the Southern District of Texas and a substantial part of the events or omissions giving rise to the claim occurred within the Southern District of Texas.

**BACKGROUND**

V.

In January 2016, Ingram hired Stolt to clean its tank barge, the IB1041 (the "Barge"). Ingram provided cleaning orders to Stolt on January 19, 2016, which are attached hereto as Exhibit "A." The orders included information that the Barge previously contained caustic soda as its cargo and instructions to perform a hot water wash. Specific instructions were included in the orders to wash the pump, pipeline, and vapor line. Stolt's invoice for its services, attached hereto as Exhibit "B," reflects Stolt's understanding of and agreement to perform the cleaning requested by Ingram. Stolt's invoice comments read, "PROVIDE MATERIAL & LABOR TO: STRIP LIQUID FREE, HOT WATER WASH, STRIP AND BLOW DRY ALL CARGO PIPELINES, TANKS AND PUMPING SYSTEMS FROM CAUSTIC SODA. CAUSTIC WW DISPOSAL COST."

VI.

Stolt began cleaning the Barge on January 19, 2016, and the Barge was released to the Kirby Inland Marine fleet on January 22, 2016, departing the shipyard at 06:50.

VII.

On January 22, 2016, the Barge was spotted at Shell, Deer Park, Texas, and was visually inspected by a third-party inspector, Interek, prior to loading a partial quantity, 989.57 short liquid tons, of acetone. Samples were taken from the cargo tank and the analyses indicated that the product on board met the specifications for acetone.

VIII.

On January 25, 2016, the Barge was then shifted to Channel Terminal and completed the loading of an additional 400.87 short liquid tons of acetone (collectively with the loading at Shell, the "Cargo"). Another sample of the Cargo was taken by a third-party inspector, SGS, and it met all specifications for acetone.

IX.

The Barge then traveled to Illinois Marine Fleet in Channahon, Illinois, arriving on February 25, 2016. The Barge was spotted at Alpont Terminal on February 26, 2016. The following day, SGS took another sample of the Cargo in the Barge, which was determined to meet all specifications, and at 07:10 on February 27, 2016, the Barge began discharging its Cargo into the shore tank at Alpont Terminal.

X.

The day before the Barge was offloaded into the shore tank at Alpont Terminal, February 26, 2017, three trucks (for two different customers) were loaded with acetone from the Alpont Terminal shore tank, and upon delivery, there were no issues with the acetone.

XI.

Two days after the Cargo was offloaded to the Alpont Terminal shore tank, two trucks were loaded from the shore tank and product was shipped to two different customers. Both

customers rejected the shipments based on pre-sampling that indicated the product was off-spec on color.

XII.

Samples were taken from the rejected truck shipments and inspected by SGS. In response to the reports of off-spec acetone in the trucks, the remaining product in the Alpont Terminal shore tank into which the Cargo had been offloaded was simultaneously sampled at the request of Ingram's customer, Matrix Chemical, LLC ("Matrix"). The analyses showed that caustic soda had been introduced into the shore tank creating a chemical reaction with the acetone and producing diacetone alcohol.

XIII.

The Barge was shifted to Full Circle Shipyard in Lemont, Illinois, where a complete inspection was performed. During the inspection, a solid block of caustic soda was discovered in the header of the Barge. A subsequent inspection revealed evidence of caustic soda in the form of a white powdery residue in the pipeline, header, and cargo tank as seen in the pictures attached hereto as Exhibit "C." It was apparent that the Barge had not been properly cleaned pursuant to the orders provided by Ingram to Stolt.

XIV.

On March 1, 2016 Ingram notified Stolt of the contamination due to improper cleaning, and a Notice of Liability was sent the following day, a copy of which is attached as Exhibit "D." On March 25, 2016, Ingram followed up with a demand letter outlining the chronology of events and the resulting damage, attached hereto as Exhibit "E."

XV.

As a result of the contamination of the acetone in the Alpont Terminal shore tank, Matrix has made claims against Ingram for lost product and costs and expenses to clean the shore tank, currently totaling more than $1,500,000. Matrix's Notice of Liability and estimated damages are attached as Exhibit "F."

XVI.

On May 18, 2016, Ingram, through counsel, once again made demand on Stolt for the damages caused by the inadequate and improper cleaning of the Barge. A copy of the letter is attached as Exhibit "G." Stolt replied denying "any and all responsibility for the alleged off-spec nature of the Acetone cargo, or the condition of the barge IB1041." A copy of the letter is attached as Exhibit "H."

## COUNT I – BREACH OF CONTRACT

XVII.

Ingram and Stolt entered into a valid and enforceable contract. By this contract, the parties agreed that Stolt would provide Ingram with cleaning services, specifically including hot water washing of the Barge and its pump, pipeline, and vapor line.

XVIII.

Stolt breached the contract by failing to properly clean the Barge.

XIX.

Stolt's breach was material because Stolt did not substantially perform a material obligation required under the agreement between the parties causing monetary loss to Ingram, an injury that was a natural, probable, and foreseeable result of Stolt's breach.

XX.

Because of Stolt's material breach, Ingram has and will suffer damages in the amounts claimed by Matrix, plus attorney fees and costs.

### COUNT II - NEGLIGENCE

XXI.

In the alternative, Stolt owed a legal duty to Ingram to act as a reasonably prudent barge cleaner with the superior judgment, skill, and knowledge of a professional barge cleaner.

XXII.

Stolt failed to perform its duty with due care, thus, Stolt breached its duty.

XXIII.

Stolt's breach of its duty was the actual and proximate cause of Ingram's injury and resulted in a monetary loss.

XXIV.

As a result of Stolt's breach, Ingram has and will suffer damages in the amounts claimed by Matrix, plus attorney fees and costs.

### CONDITIONS PRECEDENT

XXV.

All conditions precedent to Ingram's claim for relief have been performed or have occurred.

**WHEREFORE**, Plaintiff, Ingram Barge Company, prays that this Original Complaint be deemed good and sufficient, and after all due proceedings be had, there be judgment in its favor and against Stolt-Nielsen USA, Inc. for: (i) actual damages; (ii) pre- and post-judgment interest at the highest rate allowed by law; (iii) all costs; and (iv) all other equitable relief to

which Ingram is entitled.  Ingram seeks relief under any available theory whether or not specifically indicated herein.

        Respectfully submitted,

        */s/ Michael A. Golemi*
        Michael A. Golemi
        Attorney in Charge
        State Bar No. 24047536
        Fed. ID No. 559843
        1001 Fannin Street, Suite 1800
        Houston, Texas 77002
        Telephone: (713) 651-2900
        Facsimile: (713) 651-2908
        E-mail: magolemi@liskow.com

        **ATTORNEY FOR INGRAM BARGE COMPANY**

**OF COUNSEL:**

LISKOW & LEWIS
Lauren Randle
State Bar No. 24074931
Fed. ID No. 1331536
1001 Fannin, Suite 1800
Houston, Texas 77002
Telephone:  (713) 651-2900
Facsimile: (713) 651-2908
Email:  lnrandle@liskow.com

4453452_3.docx